**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
ENTERED

SEP - 3 2015

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| JOEL LINARES-SOBERANIS, | § | |
| Movant, | § | |
| | § | |
| v. | § | Civil Action No. B-12-175 |
| | § | (Criminal No. B-10-331-1) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

The Court is in receipt of Joel Linares-Soberanis's 28 U.S.C. § 2255 Motion

to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody

(hereinafter, Linares-Soberanis's "Motion" or "§ 2255 Motion") and supporting

Memorandum. Dkt. Nos. 1 and 1-1. Respondent, United States of America, has

filed a Response and Amended Motion to Dismiss (hereinafter, the "Government's

Response"), arguing that Linares-Soberanis's § 2255 Motion should be dismissed

for lack of merit. Dkt. No. 11. For the reasons provided below, it is recommended

that Linares-Soberanis's § 2255 Motion be dismissed with prejudice. Additionally,

it is recommended that the Court decline to issue a certificate of appealability.

### I. Jurisdiction

This Court has jurisdiction over Linares-Soberanis's § 2255 Motion

pursuant to 28 U.S.C. § 1331 and § 2255.

## II. Background and Procedural History

According to evidence introduced at Linares-Soberanis's trial, Linares-Soberanis owned a salvage yard in 2009 called Nationwide Import Auto Salvage (hereinafter "Nationwide") in Houston, Texas.  *See United States v. Linares-Soberanis, et al.*, No. 1:10-cr-331-1, Dkt. No. 192-2 at 13-14.[1]  In October of 2009, a man named Borel Bardales-Orellana introduced Linares-Soberanis to a man named Felix Dalas-Ortega.  *Id.*  Linares-Soberanis offered to pay Dalas-Ortega $3,000 to drive a truck into Mexico, pick up some drugs, and bring them back to Nationwide.  *Id.* at 15-16.  Linares-Soberanis arranged to purchase a white 2004 Dodge pickup truck for Dalas-Ortega to drive.  CR Dkt. No. 192-1 at 69-83; CR Dkt. No. 194-4 at 12.   Subsequently, Linares-Soberanis, Dalas-Ortega, and Bardales-Orellana took steps to have the truck registered and insured in Dalas-Ortega's name.  CR Dkt. No. 192-2 at 16-17.

On November 5, 2009, Dalas-Ortega left for Mexico in the Dodge truck, following a man named Fernando Argenis-Huezo, who Lineras-Soberanis had recruited to act as Dalas-Ortega's guide.  CR Dkt. No. 192-2 at 17-26.   After arriving in Mexico, Argenis-Huezo switched the driveshaft of the Dodge truck with that of another truck.  *Id.* at 27-29.  Dalas-Ortega then separated from Argenis-Huezo and drove back to the border.  *Id.* at 30.  On November 6, 2009, Dalas-Ortega was questioned by a United States Customs and Border Protection (hereinafter, "CBP") officer at the Gateway International Bridge port of entry in

---

[1]  Hereinafter, Linares-Soberanis's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their docket entry numbers.

Brownsville, Texas. CR Dkt. No. 192-1 at 9-11. While in secondary inspection, CBP officers inspected the Dodge truck and found a substance in the truck's driveshaft. The substance tested positive for heroin. *Id.* at 14-19.

On March 30, 2010, a federal grand jury issued an indictment charging Linares-Soberanis and Argenis-Huezo with two counts of criminal conduct. CR Dkt. No. 33.[2] Count 1 of the indictment charged Linares-Soberanis and Argenis-Huezo with conspiracy to possess, with intent to distribute, "more than one kilogram of heroin, that is approximately 17.8 kilograms of heroin," in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(a). *Id.* Count 2 of the indictment charged them with conspiracy to import this same amount of heroin into the United States in violation of 21 U.S.C. §§ 963, 952(a), and 960(b)(1). *Id.* at 1-2. On April 27, 2010, the grand jury issued a superseding indictment, which added a notice of criminal forfeiture, but was in all other respects the same as the original indictment. CR Dkt. No. 56.

On May 6, 2010, Linares-Soberanis moved to replace his counsel, Lance Hac Nguyen, with Adrian Almaguer and Tim Gyftakos. CR Dkt. No. 65. The Court granted his motion. CR Dkt. No. 66. Later, on July 19, 2010, Linares-Soberanis moved to change counsel again, filing a motion to replace Adrian Almaguer and Tim Gyftakos with Nguyen. CR Dkt. No. 91. The Court granted the motion. CR Dkt. No. 93.

---

[2] Early in the proceedings, Dalas-Ortega and Bardales-Orellana entered into agreements with the Government to provide truthful testimony at Linares-Soberanis's trial and were not charged in this Indictment. *See* CR Dkt. No. 192-2 at 12-13; CR Dkt. No. 193-3 at 37; CR Dkt. No. 194 at 16.

On July 20, 2010, the grand jury issued a final superseding three-count indictment against Linares-Soberanis. CR Dkt. No. 94. Count 1 of this indictment charged Linares-Soberanis with conspiracy to possess, with intent to distribute, more than one kilogram of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(a). *Id.* at 1. Count 2 of the indictment charged him with conspiracy to import this same amount of heroin into the United States in violation of 21 U.S.C. §§ 963, 952(a), and 960(b)(1). *Id.* at 1-2. Count 3 of the indictment charged him with violating 18 U.S.C. §§ 922(g)(5)(B) and 924(a)(2). More specifically, Count 3 charged him with knowingly possessing a firearm, and "affecting interstate commerce" with "a Smith and Wesson .357 Caliber Revolver bearing an obliterated serial number, said firearm being transported or shipped in interstate commerce[,]" as an alien present in the United States on a non-immigrant visa. *Id.* at 3.

On October 18, 2010, Linares-Soberanis filed a motion seeking to enter a conditional plea to Count 3. CR Dkt. No. 131. The Court granted his motion. CR Dkt. No. 132. Linares-Soberanis then went to trial, and a jury found him guilty of the conduct charged in Counts 1 and 2 on October 22, 2010. CR Dkt. No. 147. At sentencing, the Court permitted Linares-Soberanis to replace Nguyen with Ralph Martinez as his counsel. *See* CR Minute Entry dated January 18, 2011. The Court then sentenced Linares-Soberanis to 360 months of imprisonment for Count 1, 360 months of imprisonment for Count 2, and 120 months of imprisonment for Count 3. The Court ordered Linares-Soberanis to serve his terms of imprisonment

concurrently. CR Dkt. No. 170 at 1-2. The Court additionally imposed a $300 special assessment fee, a $25,000 fine, a five-year term of supervised release on Count 1, a five-year term of supervised release on Count 2, and a three-year term of supervised release on Count 3. The Court ordered the supervised release terms to be served concurrently upon Linares-Soberanis's release from imprisonment. *Id.* at 4-6.

The Court entered its judgment on February 1, 2011. CR Dkt. No. 170 at 1. Linares-Soberanis appealed, and the Fifth Circuit affirmed on March 14, 2012. CR Dkt. Nos. 205, 206; *see also United States v. Linares-Soberanis*, 464 Fed. App'x. 334 (5th Cir. 2012) (unpublished). Linares-Soberanis did not file a petition for certiorari in the United States Supreme Court. Dkt. No. 1 at 4.

Linares-Soberanis filed his instant timely § 2255 Motion through counsel on September 7, 2012. Dkt. No. 1 at 15. He claims an entitlement to § 2255 relief based on the alleged ineffective assistance of his trial counsel, Lance Hac Nguyen. *Id.* at 6. Specifically, he makes the following claims about Nguyen's assistance.

1. Nguyen "bolstered the credibility of government witnesses by imputing the existence of a conspiracy as a predetermined fact" during his jury argument and examination of witnesses. Dkt. No. 1 at 6.

2. Nguyen bolstered the testimony of government witnesses by emphasizing that the witnesses were truthful as a matter of fact. Dkt. No. 1 at 6.

3. Nguyen "open[ed] the door" and allowed the jury to consider inadmissible evidence indicating that the Government had targeted Linares-Soberanis in

another federal investigation unrelated to the investigation resulting in his trial. Dkt. No. 1 at 6. Nguyen "examined witnesses beyond the scope of direct examination and permitted witnesses to explain and expound on testimony given during direct examination that was harmful to [Linares-Soberanis]." Dkt. No. 1 at 6.

4. Nguyen failed to object when the Government bolstered the credibility of its witnesses. Dkt. No. 1 at 6.

5. Nguyen failed to object when the Government insinuated that Linares-Soberanis posed a threat to witnesses. Dkt. No. 1 at 6.

6. Nguyen failed to object to testimony regarding the recovery of a gun at Linares-Soberanis's residence that had an obliterated serial number. Dkt. No. 1-1 at 8.

The Government filed its Response on February 11, 2014. Dkt. No. 11. In its Response, the Government argues that Linares-Soberanis's § 2255 Motion should be dismissed because it lacks merit. Dkt. No. 11 at 29, 49. Linares-Soberanis has not responded to the Government's Response, despite being notified of his right to file a reply. *See* Dkt. No. 10 at 2.

### III. Legal Standards

**A. 28 U.S.C. § 2255**. Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court

was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.   28 U.S.C. § 2255(a).   The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

   **B.   The Right to Effective Assistance of Counsel.**   The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, ____ U.S. ____, 132 S.Ct. 1399, 1405 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).   Critical stages include not only trial, but also pretrial proceedings — including the plea-bargaining process. *Laffler v. Cooper*, ____ U.S. ____, 132 S.Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Laffler*, 132 S.Ct. 1376, 1385-1386.   The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel at any of the critical

stages mentioned above was announced by the Supreme Court in *Strickland v.*

*Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.   First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. 668, 687 (1984).

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994).   A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.   *See Strickland*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993).

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must

"indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Id.* In order to establish that he sustained prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams*, 529 U.S. at 391; *Strickland*, 466 U.S. at 694.

The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 393 n. 17; *Strickland*, 466 U.S. at 692.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under that test will ordinarily make it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994). Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the

issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987). It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992); *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

## IV. Discussion

Linares-Soberanis's § 2255 Motion lists three grounds for relief based on the alleged ineffective assistance of his counsel. Dkt. No. 1 at 6. However, each ground for relief contains several distinct claims and Linares-Soberanis presents them in a somewhat disorganized and overlapping manner. *See id.*, and Dkt. No. 1-1. Accordingly, for clarity's sake, the Court reviews Linares-Soberanis's claims not as presented, but as addressed below.

**A. Linares-Soberanis's claim that Nguyen bolstered the credibility of the Government's witnesses by imputing the existence of a conspiracy as a predetermined fact during his jury argument and examination of witnesses.** Linares-Soberanis repeatedly asserts that Nguyen bolstered the credibility of the Government's witnesses by suggesting to the jury that the Government would prove that there had been a conspiracy to import drugs into the country from Mexico. Dkt. No. 1 at 6; Dkt. No. 1-1 at 7, 10, 12, 18. Linares-Soberanis states that Nguyen "conceded that government witnesses would prove a [sic] the existence of conspiracy" during his opening statement. Dkt. No. 1-1 at 7.

He contends that Nguyen conceded that the Government would prove that individuals associated with Linares-Soberanis had traveled to Mexico to obtain drugs. *Id.* He suggests that that Nguyen improperly bolstered the credibility of Drug Enforcement Administration ("DEA") agent George Delauney by asking Agent Delauney if Linares-Soberanis was involved in the charged drug conspiracy. *Id.* at 8 and 12 (citing CR Dkt. No. 194-4 at 38). Finally, Linares-Soberanis cites to numerous pages of the trial transcript and states that these pages show that Nguyen "imputed the existence of a conspiracy" while questioning Dalas-Ortega, Argenis-Huezo, Bardales-Orellana, and Agent Jacob Moya. *Id.* at 10.

Here, although Linares-Soberanis's arguments are sometimes unclear, his claim has two components. First, Soberanis takes issue with the fact that Nguyen conceded the existence of a conspiracy to the jury in the first instance. Second, he suggests that by conceding the existence of a conspiracy, Nguyen bolstered the credibility of government witness who testified against Linares-Soberanis.

With respect to the first component of his claim, a thorough review of the record and the trial transcript reveals that the Government had overwhelming evidence that certain individuals had conspired to import drugs into the country with the intent to distribute them. *See* CR Dkt. No. 192-2 at 22; CR Dkt. No. 194-1 at 7 through CR Dkt. No. 194-2 at 9; CR Dkt. No. 194-4 at 11-17, 20-22; *see generally* CR Dkt. Nos. 192 through 195-2. Linares-Soberanis even refers to this evidence himself in his § 2255 Memorandum. Dkt. No. 1-1 at 8-9, 13-15. He also refers to Bardales-Orellana, Argenis-Huezo and Dalas-Ortega as

"coconspirators[.]" *Id.* at 8. In light of this evidence, the Court should not find that Nguyen was ineffective for failing to present a defense which involved denying the existence of a conspiracy in the first instance. As will be shown below, Nguyen's opening statement indicates that he made a strategic choice to concede the existence of a conspiracy, albeit one that Linares-Soberanis was uninvolved in, because denying the existence of any conspiracy would have undermined the credibility of Linares-Soberanis's defense. An ineffective assistance of counsel claim cannot be based on counsel's strategy unless the strategy is "so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). Linares-Soberanis has not shown that Nguyen's choice here permeated his trial with unfairness as he has not even shown that the choice was deficient.

With respect to the second component of his claim, Linares-Soberanis argues that, merely by conceding that a conspiracy had occurred, Nguyen necessarily validated the testimony of the Government's witnesses. This argument incorrectly presupposes that denying the existence of a conspiracy was a reasonable option for Nguyen. This argument also ignores the content of Nguyen's questions and statements before the jury.

Nguyen's opening statement reveals that he reasonably believed that failing to concede the existence of a conspiracy would undermine the credibility of Linares-Soberanis's defense. Instead of denying the existence of a conspiracy, it is clear that Nguyen planned to convince the jury that Linares-Soberanis did not

participate in the conspiracy.   More specifically, it is clear that he intended to convince the jury that Argenis-Huezo had orchestrated the conspiracy without Linares-Soberanis's knowledge.  *See* CR Dkt. No. 192-1 at 2-6.

> You're going to see a lot of documents and evidence and probably a lot of video on the screen and certainly a lot of witnesses.  Now, most of those witnesses have evidence to prove that there was a conspiracy. We know that.  Huezo and Ortega already admitted they worked together.  A lot of them – of that evidence shows Huezo crossing the border, Mr. Huezo driving to Falfurrias.  We already know that.  We know that drugs – they went down for drugs.  They picked it up. They tried to bring it back, come back.  They got caught.  They made a deal.  We know that. . . .
>
> *****
>
> In the end I am confident that you can conclude that Huezo is actually the man in charge at least in Houston for these things.  I don't know how high he goes. . . . I think in the end, from the evidence you will conclude not only that Joel Linares is not involved, you will probably start thinking that this is Huezo's deal.

CR Dkt. No. 192-1 at 2, 6 (formatting altered).

Linares-Soberanis has also failed to show that Nguyen's questioning of witnesses was deficient.  Linares-Soberanis references numerous pages of the trial transcript and states that these pages show that Nguyen "imputed the existence of a conspiracy" while questioning Dalas-Ortega, Argenis-Huezo, Bardales-Orellana, and Agent Moya.  Dkt. No. 1-1 at 10 (citing CR Dkt. Nos. 192-2 at 35; 192-3 at 25, 35; 192-4 at 2; 193 at 12-13; 193-1 at 1, 25; 193-2 at 22; 194-2 at 12, 29, 30; 194-3 at 32-33; 194-4 at 18).  Here, the transcript does reveal that Nguyen's questions were often framed in a way that conceded the existence of a conspiracy.  *See* CR Dkt. Nos. 192-2 at 35; 192-3 at 25, 35; 192-4 at 2; 193 at 12-13; 193-1 at 1, 25; 193-2 at 22; 194-2 at 12, 29, 30; 194-3 at 32-33; 194-4 at 18.  For the reasons provided

above, however, Linares-Soberanis has not shown how Nguyen's strategy here constitutes ineffective assistance, nor has he shown that Nguyen's questions bolstered testimony implicating Linares-Soberanis in the conspiracy.

Linares-Soberanis also states that Nguyen improperly bolstered Agent Delauney's testimony by asking him if Linares-Soberanis was involved in the charged drug conspiracy. Dkt. No. 1-1 at 12 (citing CR Dkt. No. 194-4 at 38). He contends that, by questioning Delauney regarding his culpability, Nguyen was effectively asking Delauney "to give expert testimony" regarding his culpability. *Id.* at 12-13. He states that, in response to Nguyen's question, "Agent Delauney answered 'I'm not sure.'" *Id.* at 13 (citing CR Dkt. No. 194-4 at 38).

The transcript Linares-Soberanis cites here does not support his argument. Nguyen asked Delauney if he knew if Linares-Soberanis was involved in the charged drug conspiracy. CR Dkt. No. 194-4 at 38. Delauney responded that he was not "real familiar with the facts" as he was just there to "testify about the value of the drugs," and therefore "couldn't say for sure." *Id.* This exchange does not show that Nguyen performed deficiently, nor does it show that Linares-Soberanis was in any way prejudiced by Nguyen's performance.

Linares-Soberanis has failed to show that Nguyen provided ineffective assistance by conceding the existence of a conspiracy. He has also failed to show that Nguyen bolstered the credibility of the Government's witnesses by imputing the existence of a conspiracy as a predetermined fact during his jury argument

and examination of witnesses.  It is recommended that Linares-Soberanis's claims here be dismissed with prejudice for lack of merit.

**B.  Linares-Soberanis's claim that Nguyen bolstered the testimony of government witnesses by emphasizing that the witnesses were truthful as a matter of fact.**  Linares-Soberanis repeatedly asserts that, in questioning the Government's witnesses, Nguyen bolstered the credibility of their testimony by suggesting that they were telling the truth.  Dkt. No. 1 at 6; Dkt. No. 1-1 at 6-7, 17-22.  Specifically, he states that the Nguyen bolstered the testimony of Dalas-Ortega, Argenis-Huezo, Bardales-Orellana, and Agent Moya.  *Id.*

Linares-Soberanis cites to numerous pages in the trial transcript to support this claim.  He states that these pages of the trial transcript demonstrate that Nguyen's questioning helped to establish that Argenis-Huezo had not lied to federal agents.  Dkt. No. 1-1 at 6, 11 (citing CR Dkt. Nos. 193-1 at 25 and 194-4 at 36).  He asserts that Nguyen questioned Bardales-Orellana in a way that implied that Bardales-Orellana had been honest with law enforcement during plea discussions.  *Id.* at 6, 11 (citing CR Dkt. Nos. 194 at 12-13, 15-16; and 194-4 at 36).[3]  He additionally contends that Nguyen bolstered Agent Moya's testimony by (1) asking Moya to give his opinion regarding the credibility of Bardales-Orellana

---

[3] Linares-Soberanis's citations to the trial transcript are not always correct.  For example, he cites pages 15-16 of Volume III of the transcript to support of his argument that Nguyen bolstered Bardales-Orellana's testimony.  Dkt. No. 1-1 at 6.  However, the Government's redirect examination of Bardales-Orellana begins midway through page 15 and continues through page 16; and, the few lines of page 15 that contain Nguyen's questions to Bardales-Orellana do not evidence bolstering.  *See* CR Dkt. No. 194 at 15-16.

as compared to Dalas-Ortega; (2) asking Moya how many opportunities the Government gave Dalas-Ortega to tell the truth; (3) asking Moya how many times Dalas-Ortega was given to provide truthful testimony; (4) asking Moya if he thought Dalas-Ortega had testified truthfully; and (5) asking Moya if he had any doubt as to whether Dalas-Ortega had testified truthfully. *Id.* at 6-7 (citing CR Dkt. Nos. 194 at 18, 194-2 at 24, 194-4 at 18, 20).[4]

The trial transcript does not support Linares-Soberanis's claim. As the Fifth Circuit Court of Appeals correctly noted, "Linares's defense strategy involved challenging the credibility of the co-conspirators who testified against him." *United States v. Linares-Soberanis*, 464 Fed. App'x. 334, at 337. Nguyen did this by asking questions in a way that implied that he believed that Dalas-Ortega, Argenis-Huezo and Bardales-Orellana were not telling the truth. His questions to Moya also implied that Linares-Soberanis's codefendants had been inconsistent in reporting the relevant facts to law enforcement, and that the codefendants' stories were also inconsistent with each other. *See, e.g.*, CR Dkt. Nos. 193-1 at 3-25; 193-4 at 33-36; 194-2 at 9-25; 194-4 at 18-30.

For example, when questioning Bardales-Orellana, Nguyen does not suggest that Bardales-Orellana had been honest with law enforcement during plea discussions. Viewed in context, Nguyen's questions demonstrate his attempt to show the jury that Bardales-Orellana originally told law enforcement officers that

---

[4] Linares-Soberanis argues that Nguyen bolstered Dalas-Ortega's testimony as well. Dkt. No. 1-1 at 6 (citing CR Dkt. Nos. 192-2 at 35; 192-3 at 23, 35; 192-4 at 2). However, his citations to the transcript here all pertain to Nguyen's references to an existing conspiracy and the Court has already addressed these references above.

Linares-Soberanis had nothing to do with the crimes being investigated and only changed his story after the Government questioned him repeatedly and offered him a favorable plea agreement. Dkt. No. 193-4 at 33-36. Nguyen gets Bardales-Orellana to admit that he changed his story "180 degrees" after the agents offered him the plea agreement. *Id.* at 33. His questions also reveal that he was attempting to convince the jury that Bardales-Orellana's story changed because he understood that the Government wanted him to "point the finger at Joel Linares[.]" *Id.* at 35. The fact that Nguyen's strategy ultimately proved unsuccessful indicates that Nguyen may have posed his questions more artfully, but it does not demonstrate that Nguyen bolstered Bardales-Orellana's testimony or otherwise provided ineffective assistance.

Similarly, viewed in context, Nguyen's questioning of Argenis-Huezo reveals that he was attempting to show the jury that Argenis-Huezo could not be trusted. Nguyen did this by getting Argenis-Huezo to admit that (1) he was a convicted felon; (2) he had previously lied in court; (3) he had previously lied to the Government many times; and (4) his story had changed over time. CR Dkt. No. 193-1 at 3-25.

Finally, Nguyen's questioning of Agent Moya does not demonstrate that Nguyen bolstered the testimony of government witnesses or otherwise provided ineffective assistance of counsel. Viewed in context, Nguyen's questions show that Linares-Soberanis's codefendants had been inconsistent and Nguyen's questions to Moya were aimed at revealing that inconsistency. *See* CR Dkt. Nos. 194-2 at 9-25;

194-4 at 18-30.  Although Nguyen did ask Moya to give his opinion "as to which version -- the Bardales version or the Ortega version" was more correct, Moya was unable to answer the question and stated that he had not been able to determine the answer.  CR Dkt. No. 194-2 at 24.  Thus, Nguyen's question revealed that there was a reason to doubt the credibility of Bardales-Orellana and Dalas-Ortega, and failed to bolster the credibility of either defendant because Moya could not answer the question.  Linares-Soberanis has not demonstrated that Nguyen provided ineffective assistance, or prejudicial ineffective assistance, by bolstering the testimony of government witnesses.  His claim here should be dismissed.

C. **Linares-Soberanis's claim that Nguyen allowed inadmissible information into evidence.**  Linares-Soberanis claims that Nguyen allowed the jury to consider harmful, inadmissible evidence in three main ways.  Dkt. No. 1-1 at 7-8, 11-13, 16-17, 20-22.  First, he states that Nguyen "open[ed] the door" and allowed the jury to consider inadmissible evidence indicating that the Government had targeted Linares-Soberanis in another federal investigation unrelated to the investigation resulting in the conviction he attacks here.  Dkt. No. 1 at 6.  Second, he claims that Nguyen also "examined witnesses beyond the scope of direct examination and permitted witnesses to explain and expound on testimony given during direct examination that was harmful to [Linares-Soberanis]."  *Id.*  Third, he states that Nguyen questioned witness Marlon Fuentes in a way that caused the jury to hear that the Government had found vehicles with fraudulently transferred titles at Nationwide.  *Id.* at 8, 13, 17, 21.

> Defense counsel opened the door to testimony that another federal agency directed an investigation of Petitioner's business, Nationwide Imports, Inc. ("Nationwide").   The door to that independent and extraneous investigation was opened during counsel's cross examination of Agent Moya that implied video surveillance at Nationwide indicated no wrongdoing at that place of business during the surveillance. (R.-Vol III p. 158-171).   However, the investigation by an independent federal agency concluded wrongdoing did occur during the surveillance period.   As such, the Court ruled defense counsel opened the door to testimony that another federal agency conducted an independent investigation of Petitioner during the surveillance period.   The Court allowed the jury to hear the testimony.   Counsel also allowed Huezo to answer to the effect that Petitioner offered Huezo a "better business opportunity" that involved weapons. (R.-Vol. I p. 67).  . . . Damaging evidence was again elicited by defense counsel when counsel established vehicles found at Nationwide had titles transferred by fraudulent means during questions to Marlon Fuentes ("Fuentes"). (R. Vol. III p. 218-219).

Dkt. No. 1-1 at 7-8 (errors in original).

Linares-Soberanis's argument regarding Nguyen's questioning of Marlon Fuentes does not entitle him to § 2255 relief.  Nguyen's defense strategy included convincing the jury that Argenis-Huezo was responsible for organizing the drug trafficking activities at issue in Linares-Soberanis's case without Linares-Soberanis's knowledge. CR Dkt. No. 192-1 at 2, 6.  In furtherance of this strategy, Nguyen elicited testimony from Fuentes in order to show that, long before the white Dodge truck at issue in the case was purchased, Argenis-Huezo had solicited Fuentes's help to obtain a different Dodge truck—presumably for drug trafficking purposes.  *See* CR Dkt. No. 194-5 at 10 (containing Nguyen's statement to the Court regarding the purpose of introducing Fuentes's testimony).[5]   Fuentes

---

[5]  Evidence introduced at Linares-Soberanis's trial indicated that some drug traffickers sought out certain models of Dodge trucks because the traffickers had discovered a way to

testified that he had previously worked with Argenis-Huezo to obtain a brown Dodge truck, and could not recall ever having met Linares-Soberanis. *Id.* at 3-23. Nguyen's questioning of Fuentes was consistent with his attempt to show that Argenis-Huezo was the real orchestrator of the relevant drug trafficking activities.

Nguyen's questioning of Fuentes might also have advanced Linares-Soberanis's defense somewhat because Fuentes's testimony tended to implicate Argenis-Huezo, and Fuentes could not identify Linares-Soberanis in court. CR Dkt. No. 194-5 at 15-16. Linares-Soberanis has not shown that Nguyen's performance here was ineffective because he has not shown that his strategy here was "so ill chosen" that it permeated the entire trial with "obvious unfairness." *See Garland v. Maggio*, 717 F.2d 199, 206. He has also failed to show that, but for Nguyen's alleged unprofessional errors, the result of his proceeding would have been different. *See Strickland*, 466 U.S. at 694.

Next, Argenis-Huezo did testify that Linares-Soberanis previously told him that he had a "better business" opportunity for him that was better "than weapons." CR Dkt. No. 193-1 at 27. Nevertheless, Argenis-Huezo's better-than-weapons comment was not responsive to the question Nguyen had just asked him. Further, as it is probable that objecting would have called more attention to Argenis-Huezo's comment, the Court should not find that this failure constitutes prejudicial ineffective assistance of counsel. Argenis-Huezo also offered the comment when Nguyen was asking him about past inconsistent statements to law

---

hide drugs in the driveshafts of those trucks. *See* CR Dkt. Nos. 192 at 31, 38; 192-1 at 4, 14, 17; 194-6 at 12-13.

enforcement officers. *Id.* at 35. As Nguyen's trial strategy involved discrediting government witnesses by pointing out their past lies to government officials, his questions here do not demonstrate ineffective assistance.

Finally, Nguyen's questioning at trial did result in a finding that he had opened the door. Thus, the Court allowed the jury to consider evidence that another federal agency had been monitoring Linares-Soberanis in conjunction with a separate criminal investigation. *See* CR Dkt. Nos. 194-3 at 22-24, 32-33; 194-3 at 38 through 194-4 at 11, 15-16. Nevertheless, a review of the transcript reveals that this opening of the door was inadvertent. *Id.* The transcript also reveals that Nguyen did attempt to craft his questions carefully to avoid opening the door, but failed to be specific enough with each and every question. In other words, the transcript suggests that the Nguyen made a mistake, but it was a mistake that any diligent, seasoned defense attorney might have made. Linares-Soberanis has not shown that Nguyen's mistake here was so egregious as to constitute ineffective assistance of counsel. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) (the right to effective assistance of counsel does not include the right to "mistake-free" representation); *United States v. Rumery*, 698 F.2d 764, 766 (5th Cir. Tex. 1983) (holding that defendants are not entitled to perfect representation, and noting that "[g]ood faith errors of counsel will not usually be sufficient to justify disturbing the conviction or sentence.").

More importantly, Linares-Soberanis has not shown how Nguyen's mistake has prejudiced him. As noted above, the Government had overwhelming evidence

of Linares-Soberanis's guilt. *See* CR Dkt. Nos. 192-2 at 22; 194-1 at 7 through 194-2 at 9; 194-4 at 11-17, 20-22; *see generally* CR Dkt. Nos. 192 through 195-2. In order to establish that he sustained prejudice, Linares-Soberanis must show that there is a reasonable probability that, but for Nguyen's unprofessional errors, the result of his proceeding would have been different. *See Strickland*, 466 U.S. at 694. Linares-Soberanis has not made this showing. *See Johnson v. Cockrell*, 301 F.3d 234, 238 (5th Cir. 2002) ("It is not enough for the defendant to show mere shoddy representation or to prove the existence of errors, omissions, or strategic blunders by counsel. Bad lawyering, regardless of how bad, does not support the per se presumption of prejudice.") (quotations and citations omitted). His claim here should be dismissed.

**D.    Linares-Soberanis's claim that Nguyen provided ineffective assistance by failing to object when the Government bolstered the credibility of its witnesses.** Dkt. No. 1 at 6. Linares-Soberanis argues that Nguyen performed deficiently when he failed to object to the Government's bolstering of its witnesses, including witness Argenis-Huezo, witness Bardales-Orellana, and witness Moya. Dkt. No. 1-1 at 9-10, 13-15, 18-20, 22. He contends that the Government asked questions in such a way as to imply that (1) the Government always sought the truth; (2) the Government told witnesses not to lie; (3) the Government's witnesses understood their duty to be truthful; (4) the Government's witnesses complied with their duty to be truthful; (5) the Government conducted its pretrial debriefing sessions properly; and (6) the

Government and its agents, including the attorney prosecuting the case, had superior knowledge and could be trusted to give opinions regarding the truthfulness of witness testimony. *Id.* at 9-10, 18-19.

> For example, the prosecutor asked Huezo if he was truthful every time he (Huezo) interviewed with federal agents and if he told the truth during his trial testimony. (R.-Vol. II p. 122). The prosecutor also elicited testimony from Bardales indicating that during pretrial debriefing sessions with government agents, he was never told to lie, and defense counsel failed to object to this testimony. (R.-Vol. 1 p. 156-157). Moreover, the prosecutor utilized Agent Moya to make a global assertion that the pretrial debriefing sessions were conducted in a proper manner that emphasized to witnesses the need to be truthful.

*Id.* at 9 (formatting altered).

On appeal, the Fifth Circuit Court of Appeals considered Linares-Soberanis's argument that the Government had committed prosecutorial misconduct by improperly bolstering its witnesses. *See United States v. Linares-Soberanis*, 464 Fed. App'x. 334, at 336-37. Although the Fifth Circuit's review was limited to an examination for plain error, the Fifth Circuit held that that the Government had not bolstered its witnesses because Linares-Soberanis's "defense strategy involved challenging the credibility of the co-conspirators who testified against him." *Id.* at 337. Thus, because Linares-Soberanis's strategy involved impugning the credibility of the Government's witnesses, the Fifth Circuit held that he had failed to show that the Government had committed prosecutorial misconduct, "whether constituting plain error or otherwise, by asking improper questions or making improper arguments. *Id.* (citing *United States v. Aguilar*, 645

F.3d 319, 323 (5th Cir. 2011); *United States v. Setser*, 568 F.3d 482, 496 (5th Cir. 2009)).

Even if the Fifth Circuit had not so held, Linares-Soberanis has failed to show a right to § 2255 relief here. In general, prosecutors may not vouch for the credibility of witnesses, give personal opinions that their witnesses are telling the truth, or suggest that government agents provide truthful testimony because they work for the Government. *United States v. Gracia*, 522 F.3d 597, 601 (5th Cir. 2008). Nevertheless, prosecutors have a right to respond to credibility attacks on their witnesses. *See United States v. Aguilar*, 645 F.3d 319, 323 ("When the defense suggests that a witness will lie, the Government is entitled to show that the witness has no motive to lie."). Prosecutors also have a right to discuss the terms of a codefendant's plea agreement in order to counteract attacks on the credibility of the codefendant's testimony. *See United States v. Setser*, 568 F.3d 482, 494 ("Preemptively introducing a plea to counteract anticipated defense efforts at impeachment is a proper purpose. A defense strategy that itself heavily relies on the guilty pleas with 'frequent, pointed, and direct references,' defeats subsequent attempts to claim error in the government's use of the pleas.") (citations omitted).

Here, Nguyen's trial strategy involved discrediting the Government's witnesses and suggesting that they were providing false testimony. *See* CR Dkt. No. 192-1 at 2-6. In his pleadings before this Court, Linares-Soberanis indicates that this strategy was somewhat sound because the testimony of the Government's

witnesses constituted the only evidence tying him to the crimes charged. Dkt. No. 1-1 at 15. In light of this strategy, Linares-Soberanis has not shown that the Government's arguments or questioning of witnesses was objectionable. Consequently, he has also failed to show that Nguyen provided ineffective assistance when he failed to object. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (counsel does not render ineffective assistance by failing to make meritless objections). Linares-Soberanis's claim here should be dismissed.

**E.** **Linares-Soberanis's claim that Nguyen provided ineffective assistance by failing to object when the Government insinuated that Linares-Soberanis posed a threat to witnesses.** Dkt. No. 1 at 6. Linares-Soberanis asserts that Nguyen was ineffective for failing to object when "the prosecutor suggested through his questions to Bardales and Huezo that Petitioner posed a threat of retaliation where no factual predicate for such a proposition existed in the record." Dkt. No. 1-1 at 8; *see also id.* at 13 (same). He also contends that Nguyen should have objected when the prosecutor asked Bardales-Orellana how Linares-Soberanis and his brothers might react if they discovered that Bardales-Orellana was telling the police the truth. *Id.* at 10.

Here, the record reveals that Nguyen attempted to undermine the testimony of Argenis-Huezo and Bardales-Orellana by revealing that they had been inconsistent when reporting facts to the Government. *See, e.g.*, CR Dkt. Nos. 193-1 at 3-25; 193-4 at 33-36; 194-2 at 9-25; 194-4 at 18-30. When questioning Argenis-Huezo, the Government encouraged him to explain this inconsistency.

> Q. And, Mr. Huezo, since your arrest, you have spoken to federal agents and to our office several times; is that correct?
> A. Correct.
> Q. And you didn't tell the federal agents the whole truth about what happened; is that correct?
> A. Correct.
> Q. And why is that, Mr. Huezo?
> A. Out of fear because my family – for my family.
> Q. And what else?
> A. Since he has guards – bodyguards and people in Guatemala they could do some damage or because of what's going on right now, cause harm.
> Q. To your family?
> A. Correct.

CR Dkt. No. 193-1 at 2. Similarly, the Government asked Bardales-Orellana questions designed to show that, to the extent that he had been inconsistent, this inconsistency might be explained by the fact that Linares-Soberanis's associates had asked him to lie. CR Dkt. No. 193-3 at 35-37.

Linares-Soberanis has not shown how the Government's questioning, intended to counteract the effects of Nguyen's trial strategy, was objectionable. Having failed to do this, he has not shown that Nguyen was ineffective for failing to object. Further, even if the Court were to presume ineffectiveness, Linares-Soberanis has failed to show that, but for Nguyen's unprofessional errors, the result of his proceeding would have been different. *See Williams*, 529 U.S. at 391; *Strickland*, 466 U.S. at 694. Linares-Soberanis's claim here should be dismissed.

**F.    Linares-Soberanis's claim that Nguyen provided ineffective assistance by failing to object to testimony regarding the recovery of a gun at Linares-Soberanis's residence that had an obliterated serial**

**number**.   Linares-Soberanis claims that Nguyen should have objected to testimony relating to the recovery of a gun found at his residence that had obliterated serial numbers.   Dkt. No. 1-1 at 8, 13.   Nevertheless, as the Government correctly points out, Linares-Soberanis does not explain any "possible basis for an objection to the evidence of the gun with the obliterated serial numbers." Dkt. No. 11 at 47.   Linares-Soberanis has the burden of proof in this § 2255 action.   Having failed to brief the issue, he has failed to show that Nguyen's failure to object constitutes ineffective assistance of counsel.   Having failed to brief the issue, he has also failed to show that he has been prejudiced by Nguyen's failure to object.   Finally, as the Government correctly notes, Nguyen chose to cross examine Agent Moya regarding the gun, rather than object.   Linares-Soberanis has not shown how this strategic choice constitutes ineffective assistance or otherwise entitles him to § 2255 relief. His claim here should be dismissed.

## V. Conclusion

Viewed individually, Linares-Soberanis's claims fail to demonstrate ineffective assistance of counsel, or prejudicial ineffective assistance of counsel. Viewed collectively, Linares-Soberanis's claims also fail to demonstrate ineffective assistance of counsel, or prejudicial ineffective assistance of counsel.   For the reasons provided above, his claims should be dismissed with prejudice.

## VI. Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner/movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted). Said another way, where claims have been dismissed on the merits, the movant/petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case because Linares-Soberanis has not made a substantial showing of the denial of a constitutional right.

## VII. Recommendation

It is recommended that Linares-Soberanis's § 2255 Motion be dismissed with prejudice. Additionally, it is recommended that the Court decline to issue a certificate of appealability.

## VIII. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed this 3rd day of September, 2015.

Ignacio Torteya, III
**United States Magistrate Judge**

29/29